J-S38004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYREEK MAXWELL | : | |
| | : | |
| Appellant | : | No. 1716 EDA 2016 |

Appeal from the PCRA Order May 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009181-2010

BEFORE: GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 28, 2017**

Appellant, Tyreek Maxwell, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION
> IN DENYING [APPELLANT'S] PCRA CLAIM RAISING OUT OF
> COURT PHOTO ARRAY IDENTIFICATION [THAT] WAS MADE
> UNDER UNDULY SUGGESTIVE CIRCUMSTANCES, WHERE

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

THE EVIDENCE ESTABLISHED ONE EYE-WITNESS WAS INFLUENCED IN MAKING IDENTIFICATION BY DETECTIVES?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING PCRA RELIEF WHERE THE IN[-]COURT IDENTIFICATION WAS BASED ON OUT[-]OF[-]COURT TAINTED PHOTO ARRAY IDENTIFICATION AND A RESULT OF CONFRONTATION AT [THE] PRELIMINARY HEARING AND NOT [THE] WITNESS['] PERSONAL RECOLLECTION OF THE EVENTS SURROUNDING [THE] CRIME?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN MAKING HIS RULING WHEN [THE] PCRA COURT DENIED [APPELLANT'S] CLAIM OF BEING DENIED DUE PROCESS AND [A] FAIR TRIAL IN VIOLATION OF THE 6TH AND 14TH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING [APPELLANT] THE RIGHT TO AMEND [THE] PCRA PETITION TO CURE PLEADING DEFECTS IN [APPELLANT'S] FIRST TIMELY PCRA PETITION?

WAS DIRECT APPEAL COUNSEL INEFFECTIVE FOR FAILING TO RAISE: (A) TRIAL COURT ERROR WHEN [THE] TRIAL COURT IMPROPERLY INSTRUCTED [THE] JURY REGARDING A CHANGE OF APPEARANCE; [AND] (B) TRIAL COURT ERROR IN ALLOWING [THE] COMMONWEALTH TO INTRODUCE OTHER ACTS AND/OR PRIOR BAD ACTS EVIDENCE DURING TRIAL?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING [APPELLANT'S] PCRA CLAIM THAT DIRECT APPEAL [COUNSEL] AND TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO CHALLENGE AND/OR DISCOVER DURING DIRECT APPEAL AND TRIAL THE EXISTENCE AND IDENTITY TO BECOME A SUSPECT AND INCLUDED IN [THE] LINE-UP, THEREBY CAUSING AND/OR FACILITATING THE DEPRIVATION OF [APPELLANT'S] 6TH AND 14TH AMENDMENT RIGHT TO CONFRONTATION?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING [APPELLANT'S] PCRA CLAIM THAT TRIAL

COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE WEIGHT OF THE EVIDENCE?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING [APPELLANT'S] PCRA CLAIM OF ACTUAL INNOCENCE?

DID THE PCRA COURT ERR AND ABUSE [ITS] DISCRETION IN DENYING [APPELLANT'S] PCRA CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL AND/OR USE ALIBI WITNESSES AND DEFENSE DURING TRIAL?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we conclude Appellant's issues on appeal merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed August 16, 2016, at 5-15) (finding: **(1)** Superior Court rejected on direct appeal Appellant's claim that unduly suggestive photo array led to identification of Appellant as perpetrator; because Appellant previously litigated this claim, it is not cognizable on collateral review; **(2)** Appellant could have raised on direct appeal claim that in-court identification was based on unduly suggestive out-of-court photo array and confrontation at preliminary hearing; Appellant failed to do so, so this claim is waived; **(3)** exhibits D2 and D3 were forms victims filled out at pre-trial lineup, which described perpetrators of robbery; Appellant made formal request for exhibits during PCRA proceeding; however, Appellant failed to demonstrate extraordinary circumstances

entitled him to discovery of exhibits; thus, PCRA court's denial of Appellant's request for exhibits did not deny his due process rights; **(4-5)** Appellant failed to raise on direct appeal claims that trial court erred when it issued jury instruction about change of appearance and allowed Commonwealth to introduce "other acts" evidence; thus, these particular claims are waived;[2] **(6)** Detective Leahy created photo array based on tips police received in response to news coverage of robbery; Detective Leahy showed photo array to two victims, who both identified Appellant as one of robbers; Appellant claims trial counsel was ineffective for failure to learn source of tips, which led to violation of Appellant's Confrontation Clause rights at trial; however, tips led only to creation of photo array; as such, statements about tips at

---

[2] In his PCRA petition, Appellant raised claims of trial court error contained in issue five without any reference to ineffectiveness of direct appeal counsel. The PCRA court properly determined Appellant waived these claims for failure to raise them on direct appeal. Appellant now raises the allegations of trial court error under the rubric of ineffective assistance of direct appeal counsel; however, Appellant's failure to do so in his PCRA petition results in waiver for purposes of our review. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011), *appeal denied*, 612 Pa. 698, 30 A.3d 487 (2011) (explaining issues not raised in PCRA petition cannot be considered on appeal). To the extent Appellant asserts the PCRA court should have warned him of the pleading defect related to the allegations of trial court error, Appellant fails to cite any relevant law to support his claim. *See Commonwealth v. Owens*, 750 A.2d 872, 877 (Pa.Super. 2000) (explaining failure to cite case law or other legal authority in support of argument results in waiver of claim). Further, Appellant chose to proceed *pro se* despite appointment of counsel. Appellant cannot fault the PCRA court for any pleading defect, because the PCRA court has no duty to act as counsel for Appellant, who must accept the consequences of his decision to proceed *pro se*.

trial were used merely to explain Detective Leahy's course of investigation, not to prove truth of matter asserted; thus, Confrontation Clause challenge would have been meritless; further, trial counsel's failure to discover and challenge source of tip information did not prejudice Appellant because discovery of source would have only identified additional inculpatory evidence against Appellant; therefore, knowledge of source of tips would not have led to different outcome at trial; **(7)** Appellant did not raise in PCRA court claim that trial counsel was ineffective for failure to challenge weight of evidence; therefore, claim is waived on appeal; Appellant's claim also fails to explain how verdict was against weight of evidence or how trial counsel was ineffective for failing to challenge weight of evidence; thus, Appellant's claim is further waived for vagueness; **(8)** Appellant claims exhibits and trial testimony contradict identification evidence at trial and prove Appellant was not perpetrator of robbery; Appellant asserts direct appeal counsel should have raised this challenge to weight of evidence claim on direct appeal; initially, direct appeal counsel cannot be ineffective for failure to raise actual innocence claim because Appellant did not challenge weight of identification evidence in post-sentence motion; further, Appellant cannot demonstrate he was prejudiced by direct appeal counsel's actions; two victims identified Appellant in photo array, and at trial, as one of individuals who had robbed them at gunpoint; while Appellant claims victims' failure to mention tattoos or identify Appellant in lineup proves misidentification, jury was free to

accept victims' testimony and reject Appellant's arguments; moreover, fact that surveillance video was unable to delineate Appellant's tattoos did not undermine convincing identification testimony at trial; because compelling evidence existed to support jury's conclusion that Appellant committed crime, court would have denied weight of evidence challenge; thus, direct appeal counsel was not ineffective for failing to raise actual innocence claim on this basis; **(9)** evidence presented at PCRA hearing established that counsel had reasonable basis for not calling alibi witnesses at trial; at PCRA hearing, trial counsel testified she spoke with each potential alibi witness prior to trial; according to trial counsel, each potential alibi witness gave trial counsel conflicting answers to Appellant's whereabouts on date of robbery; trial counsel said she did not think witnesses provided true alibi defense because they could not remember with specificity when Appellant left their presence; trial counsel explained she chose not to call witnesses at trial because their stories were not particularly strong or helpful; trial counsel also noted that witnesses' stories conflicted with Appellant's version of events on night of robbery; trial counsel was concerned presentation of weak alibi evidence would cause jury to question entire defense; PCRA court believed trial counsel's testimony, finding counsel had reasonable basis for failure to present alibi evidence).  Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/28/2017</u>

**FILED**

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

AUG 1 6 2016

Appeals/Post Trial
Office of Judicial Records

COMMONWEALTH OF
PENNSYLVANIA                          :        CP-51-CR-0009181-2010

                                      :

        v.                            :        CP-51-CR-0009181-2010 Comm. v. Maxwell, Tyreek
                                      :                        Opinion
                                      :
TYREEK MAXWELL                        :

                                               7486459991

        OPINION

BRONSON, J.                                    August 16, 2016

## I. PROCEDURAL BACKGROUND

On March 10, 2011, following a jury trial before this Court, defendant Tyreek Maxwell was convicted of two counts of first-degree robbery (18 Pa.C.S. § 3701(a)(1)(ii)), one count of conspiracy to commit first-degree robbery (18 Pa.C.S. §§ 903, 3701(a)(1)(ii)), one count of possessing an instrument of crime ("PIC") (18 Pa.C.S. § 907(a)), and one count of possession of a firearm by a prohibited person (18 Pa.C.S § 6015(a.1)).[1] On May 5, 2011, the Court imposed an aggregate sentence of eight-and-one-half to twenty years incarceration in state prison. On May 12, 2011, defendant filed a post-sentence motion, which the Court denied on July 26, 2011. Defendant was represented at trial and at sentencing by Bernice Melamud, Esquire, of the Defender Association of Philadelphia, and the Defender Association continued to represent defendant on appeal.

---

[1] The section 6105 charge required the Commonwealth to prove defendant's prior juvenile adjudication, which disqualified him from owning a gun, as an element of the offense. The Court severed that charge and submitted it to the jury after the jury returned its verdict of guilty on the robbery, conspiracy, and PIC charges. N.T. 3/9/2011 at 102; 3/10/2011 at 16-17.

On August 3, 2012, the Superior Court affirmed defendant's judgment of sentence. Defendant then filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA") on August 31, 2012. Gary Server, Esquire was appointed to represent defendant on June 24, 2013. On August 4, 2014, defendant filed a motion, pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), requesting that he be permitted to proceed *pro se*. The Court held a *Grazier* hearing on March 19, 2015, after which the Court relieved Mr. Server and permitted defendant to proceed *pro se*. On September 15, 2015, defendant filed an Amended PCRA Petition ("Amended Petition") raising multiple claims of trial and appellate counsel ineffectiveness and claims regarding the legality of defendant's sentence. On December 15, 2015, defendant also filed a document entitled Issues to be Asserted on Initial P.C.R.A./Right to Amend ("Supplemental Petition"), in which defendant raised additional claims of counsel ineffectiveness, as well as multiple claims of trial court error. On May 4, 2016, the Court held an evidentiary hearing on a claim defendant raised concerning counsel's failure to call alibi witnesses. Following the evidentiary hearing, the Court entered an order dismissing all of defendant's claims. Defendant has now appealed this Court's dismissal of his PCRA petitions, claiming: 1) the photo array prepared in this matter was unduly suggestive; 2) defendant's right of confrontation was violated during trial; 3) trial counsel was ineffective for failing to present an alibi defense at trial; 4) defendant was denied due process when he was denied a copy of trial exhibits D2 and D3; 5) the trial court erred by permitting the Commonwealth to introduce other acts evidence at trial; 6) the Commonwealth was impermissibly allowed to argue concerning defendant's change in appearance at trial and the Court erred in instructing the jury regarding defendant's changed appearance; 7) the trial court erred in permitting witnesses to make an in-court identification of defendant; 8) appellate counsel was ineffective for failing to preserve or

2

raise an "actual innocence" claim; 9) defendant is serving an illegal sentence, as the mandatory minimum statute he was sentenced under has been ruled unconstitutional and defendant's sentences should have merged; and 10) trial counsel was ineffective for failing to challenge the weight of the evidence during trial.[2] Concise Statement of Errors Complained of on Appeal ("Statement of Errors") at ¶¶ 1-10.

## II. FACTUAL BACKGROUND

The factual background of this case is set forth in this Court's 1925(a) Opinion in defendant's direct appeal as follows:

> At trial, the Commonwealth presented the testimony of Lauro Paulino, Carlos Salguero, Philadelphia Police Officers Christopher Hyk, Kyle Morris, Brian Waters, and James McCullough, and Philadelphia Police Detectives Francis Graf, Shawn Leahy, and Bill Urban. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.
>
> On September 2, 2009, Lauro Paulino, his employee Carlos Salguero, and two customers were in Mr. Paulino's corner grocery store at 140 East Wyoming Avenue in Philadelphia. N.T. 3/8/2011 at 54-55, 106-107. At approximately 10 p.m., Mr. Paulino was behind the store's counter when a tall man wearing a striped shirt[3] walked into the store, grabbed a bottle out of a refrigerator, and smashed it over the head of a customer, Antonio Lera. N.T. 3/8/2011 at 55-57, 65, 109. After incapacitating Mr. Lera, the tall man grabbed him in a headlock and used him "as a hostage" as he pointed a gun at Mr. Paulino. N.T. 3/8/2011 at 56. Mr. Paulino reached under the counter for his gun, but was unable to remove it from its holster. N.T. 3/8/2011 at 57.
>
> As Mr. Paulino attempted to pull out his gun, defendant, who had entered the store behind his accomplice and was wearing a black hooded jacket and jeans, approached Mr. Paulino N.T. 3/8/2011 at 57-58, 111. Pointing his own gun at Mr. Paulino, defendant demanded that Mr. Paulino give up his gun, as the man in the striped shirt threw Mr. Lara on the ground, knocking him unconscious. N.T. 3/8/2011 at 57-59, 65. At that point, defendant was standing approximately "two or three feet" from Mr. Paulino. N.T. 3/8/2011 at 59. Mr. Paulino handed defendant his gun, still in its holster. N.T. 3/8/2011 at 60. As defendant then put

---

[2] Defendant filed an Amended Concise Statement of Errors Complained of on Appeal in which he claims that the Court erred in denying his claims that the Court erred in letting in other acts evidence and in giving the jury charge regarding his change in appearance, without giving him the right to cure pleading defects in these claims. As will be seen below, these claims were denied since they were previously litigated, and not due to pleading defects.

[3] Defendant's accomplice was not located or charged.

3

his own gun in his pocket and attempted to get Mr. Paulino's gun out of its holster, Mr. Paulino looked straight at defendant's face for 20 seconds. N.T. 3/8/2011 at 60.

Defendant's accomplice then stole approximately fifteen hundred dollars from the combination of Mr. Paulino's wallet and the cash register, along with Mr. Paulino's cell phone and firearm permit. N.T. 3/8/2011 at 63-64, 96. As his accomplice robbed Mr. Paulino, defendant robbed Mr. Salguero of his wallet, which contained approximately fifty dollars, and a gold chain that Mr. Salguero was wearing. N.T. 3/8/2011 at 112-113. He also robbed customer Satronino Garcia of a wallet containing five hundred dollars, a cell phone, and a gold chain. N.T. 3/9/2011 at 22-23, 31-32. After he robbed the victims, defendant's accomplice told everyone not to move, and he and defendant fled the store. N.T. 3/8/2011 at 65-66. Mr. Paulino and another customer ran after defendant and his accomplice, but did not catch them. N.T. 3/8/2011 at 66-67. Mr. Paulino then called the police. N.T. 3/8/2011 at 68-69.

As the robbery took place, Philadelphia Police Officers Brian Waters and Frysiek[4] were patrolling the 25th District, which encompasses Wyoming Avenue. N.T. 3/9/2011 at 14-16. Within one minute of Mr. Paulino's phone call to police, Officer Waters and Officer Frysiek arrived at the scene of the crime. N.T. 3/9/2011 at 17. The officers acquired a description of the suspects from the witnesses. N.T. 3/9/2011 at 28-29. Mr. Paulino then went to the police station to give a statement. N.T. 3/8/2011 at 83-84. Mr. Salguero went to the police station and gave a statement the following day. N.T. 3/8/2011 at 120-121.

At the same time, Philadelphia Police Officers Christopher Hyk, Kyle Morris, and Sawicki[5] were doing a routine patrol of the 25th District. N.T. 3/8/2011 at 131. At approximately 11:50 p.m., the officers observed defendant bending down between two parked vehicles. N.T. 3/8/2011 at 133, 151-152. The officers exited their squad car, at which point defendant ran. N.T. 3/8/2011 at 133-134. All three officers pursued defendant as he ran down North Marvin Street and through the front door of a house. N.T. 3/8/2011 at 133-136. As he entered the house, defendant discarded a handgun. N.T. 3/8/2011 at 152-153. Defendant Officers Morris and Sawicki caught defendant and arrested him, while Officer Hyk recovered the gun. N.T. 3/8/2011 at 136, 155-156. Defendant was arrested on the charge of possession of a firearm by a prohibited person, for the gun that he discarded during the chase.

Mr. Paulino's store had twelve functioning security cameras, which recorded the events of the robbery. N.T. 3/8/2011 at 69, 73. The night of the robbery, the police and Mr. Paulino viewed the video, but had trouble downloading it. N.T. 3/9/2011 at 40-41. The next day, on September 3, 2009, the security company that had installed the cameras came and made a copy of the security camera

---

[4] Officer Frysiek's first name was not given during testimony.
[5] Officer Sawicki's first name was not given during testimony.

4

videotape for the police and a copy for Mr. Paulino. N.T. 3/8/2011 at 69-70. Police took still images from the videotape and circulated them in both television and print media in an attempt to identify the robbers. N.T. 3/9/2011 at 106. Based on information the police received as a result of the circulation of the images, police developed defendant as a suspect. N.T. 3/9/2011 at 107-108.

On December 31, 2009, detectives compiled a photo array and showed it to Mr. Paulino. N.T. 3/8/2011 at 85-86. Mr. Paulino identified defendant as one of the robbers. N.T. 3/8/2011 at 86. Detectives showed a photo array to Mr. Salguero, who also identified defendant as the man who robbed him. N.T. 3/8/2011 at 121-122.

Trial Court Opinion, filed 10/19/11 at pp. 2-4.

## III. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.* Moreover, "[w]here a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." *Commonwealth v. White*, 734 A.2d 374, 381 (Pa. 1999) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 93-94 (Pa. 1998)).

### A. Unduly Suggestive Photo Array

Defendant first alleges that the Court erred in denying defendant's claim "that the photo array presented to the Commonwealth witnesses, Lauro Paulino and Carlos Salguero, was unduly suggestive...." Statement of Errors at ¶ 1. This claim was initially raised in defendant's direct appeal and rejected by the Superior Court. *See* Superior Court Opinion, filed 8/3/12 at pp. 10-11. Because this claim was previously litigated on defendant's direct appeal, it is not cognizable

5

under the PCRA. 42 P.A.C.S. § 9543(a)(3) & 9544; *see Commonwealth v. Johnson*, --- A.3d ---, *10 (Pa. 2016).

### B. Right to Confrontation

Defendant next claims that the Court "erred in making his ruling by denying [defendant's] P.C.R.A. claim, that [defendant's]…right to confrontation was violated during trial." Statement of Errors at ¶ 2. Presumably, defendant is seeking to reassert his Amended Petition claim that trial counsel was ineffective for failing to "discover and challenge how [defendant] was developed as a suspect in this case in order to permit him rightful confrontation of his accuser…." Amended Petition at ¶ 9. This claim is without merit.

Under Pennsylvania law, counsel is presumed effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 974-75 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694).

6

Here, defendant cannot demonstrate that the underlying claim has merit. At trial, Philadelphia Police Detective Shawn Leahy testified that he prepared a photo array, including defendant's photo, based on information that he had received after posting stills of the video surveillance footage recovered in this matter, which depicted defendant's face, in the news media. N.T. 3/9/11 at 106-108. Detective Leahy then testified that he showed this array to the two victims of the robbery, who both identified defendant as one of the individuals who robbed them. N.T. 3/9/11 at 109-114.

"Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right 'to be confronted with the witnesses against him.'" *Commonwealth v. Williams*, 84 A.3d 680, 684 (Pa. 2014). "The Confrontation Clause may be violated by the admission of harmful hearsay testimony as substantive evidence against the defendant. However, it is elemental that an out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay." *Commonwealth v. Carson*, 913 A.2d 220, 258 (Pa. 2006) (internal citations and quotations omitted).

Here, the challenged statements were used by Detective Leahy as the basis for creating a photo array. They were offered solely to explain Detective Leahy's course of conduct, and not for the truth of the matter asserted. For that reason, any objection to Leahy's testimony based on the Confrontation Clause would have been meritless.

Neither can defendant demonstrate that he was prejudiced by trial counsel's failure to discover and somehow challenge the information that led Leahy to place defendant's photo in the array. Assuming, *arguendo*, that counsel had managed to identify the source of information linking defendant to the video, counsel would have only identified additional inculpatory

7

witnesses who could have testified as to defendant's identity as one of the robbers. That evidence would not have reasonably lead to a different outcome at trial. No relief is due.

### C. Failure to Present an Alibi Defense

Defendant next claims that the Court erred in denying defendant's claim that trial counsel "was ineffective for failing to call and/or use [defendant's] alibi witnesses or alibi defense during trial." Statement of Errors at ¶ 3. This claim is without merit.

At a PCRA hearing, the defendant has the burden of establishing by a preponderance of the evidence that he is eligible for relief under the Act. 42. Pa.C.S. § 9543(a). Here, the evidence presented at the hearing clearly established that trial counsel had a reasonable basis for not calling defendant's alibi witnesses at trial.

At the evidentiary hearing, defendant presented the testimony of trial counsel Bernice Melamud, Esquire, and purported alibi witnesses Maurice Ford, and Alyssa Ford.[6]  Ms. Melamud testified at the hearing that defendant informed her of three potential alibi witnesses: Alyssa Goodwin (now Alyssa Ford), Maurice Ford, and Denelia Santiago. N.T. 5/4/16 at 8-9. Ms. Melamud further testified that she reached out to these possible witnesses through her investigator prior to trial, and that these witnesses each provided conflicting answers concerning defendant's whereabouts on the day of the robbery. N.T. 5/4/16 at 10-16. Ms. Melamud also testified that she did not believe that the recollections of the alibi witnesses truly provided an alibi defense, as the witnesses could not remember with specificity what time defendant left their presence. N.T. 5/4/16 at 25-26. Ms. Melamud testified that she did not call these witnesses at trial as she did not believe that their stories were particularly strong or would be helpful, and because the witnesses conflicted with what defendant stated he had been doing that night. N.T. 5/4/16 at 17-18, 29-30. Ms. Melamud testified that she was concerned that putting weak

---

[6] Alyssa Ford's maiden name was Alyssa Goodwin. N.T. 5/4/16 at 46.

8

witnesses before the jury would cause the jury to question, and then disregard, the rest of the defense. N.T. 5/4/16 at 18. Instead, Ms. Melamud pursued a misidentification defense, as defendant's tattoos did not appear to match the individual in the surveillance footage, and witnesses had previously failed to correctly identify defendant in a lineup. N.T. 5/4/16 at 21-24. The Court found Ms. Melamud's testimony to be credible. N.T. 5/4/16 at 74-77. The testimony of purported alibi witnesses Maurice and Alyssa Ford, did not, in any way, undermine the testimony of Ms. Melamud. N.T. 5/4/16 at 74-77.

The record thus amply supports the Court's finding that Ms. Melamud had a reasonable basis for not calling defendant's alibi witnesses at trial. Given the conflict between witnesses' recollections, the failure of these witnesses to actually place defendant somewhere other than the scene of the crime at the actual time of the crime, and a viable alternative defense that did not require putting on weak alibi witnesses, the Court did not err in determining that trial counsel had a reasonable basis for not calling defendant's proposed alibi witnesses. *Miller*, 987 A.2d at 648. Therefore, the Court properly found that Ms. Melamud did not deprive defendant of effective assistance of counsel.

### D. Denial of Due Process Concerning Exhibits D2 and D3

Defendant next claims that he was "denied due process due to [defendant] being denied and/or refused a copy of exhibits (D2 and D3) which is exculpatory evidence." Statement of Errors at ¶ 4. This claim is without merit.

Exhibits D2 and D3 were forms filled out by victims Lauro Paulino and Carlos Salguero, respectively, at a pretrial lineup proceeding, and which included descriptions of some characteristics of the robbers. These exhibits were marked by defense counsel at trial and shown to Detective Bill Urban, who conducted the lineup proceeding. N.T. 3/9/11 at 129, 141-144.

9

These exhibits were not, however, moved into evidence. N.T. 3/9/11 at 157. Accordingly, the physical copies of the forms were not made part of the trial record. Defendant made a formal request to have copies of these two exhibits provided to him, arguing only that the exhibits were required and that defendant "will not be able to complete his amended petition as directed without the requested exhibits." Motion for Extension of Time, filed 8/28/15 at ¶ 2.

Under Pa.R.Crim.P. 902(E)(1), a PCRA petitioner in a non-capital case is entitled to discovery in PCRA proceedings only upon leave of the Court after a showing of exceptional circumstances. Defendant did not set forth any extraordinary circumstances that would entitle defendant to discovery, particularly as the contents of these exhibits were revealed during testimony at the trial. As defendant did not establish that exceptional circumstances existed, his request for copies of these documents, which were not part of the Court file, was properly denied and in no way deprived him of due process.

*E. Admission of Other Acts Evidence*

Defendant next claims that the Court "erred by allowing the Commonwealth to introduce other acts evidence during trial." Statement of Errors at ¶ 5. This claim is waived as defendant could have, but did not raise this matter in his direct appeal. 42 Pa.C.S. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, [or] on appeal"); *see Commonwealth v. Lambert*, 797 A.2d 232, 240 (Pa. 2001).

*F. Defendant's Change of Appearance*

Defendant next claims that the Court "erred by allowing the Commonwealth to argue and/or present a false and.or [*sic*] argument of change of appearance during trial and Lower Court improperly instructed the Jury regarding change of appearance." Statement of Errors at ¶

10

6. This claim is waived as defendant could have, but did not raise this matter in his direct appeal. 42 Pa.C.S. § 9544(b); *Lambert*, 797 A.2d at 240.

## G. *In-Court Identification*

Defendant next claims that the court "erred by allowing the Commonwealth witnesses Lauro Paulino and Carlos Salguero to make an in court identification that followed an out of court suggestive identification and after both witnesses failed to identify [defendant] out of a line up on March 22, 2010." Statement of Errors at ¶ 7. This claim is waived as defendant could have, but did not raise this matter in his direct appeal. 42 Pa.C.S. § 9544(b); *Lambert*, 797 A.2d at 240.

## H. *Failure to Present "Actual Innocence" Claim*

Defendant next claims that appellate counsel was "ineffective for failing to preserve and/or raise an 'Actual Innocence' claim on direct appeal, and/or denying [defendant's] 'Actual Innocence' claim on P.C.R.A." Statement of Errors at ¶ 8. This claim is without merit.

Defendant bases this claim on the "patent impossibility of [defendant] being the actor in light of the photographic exhibits D1 photo of doer #2 (attention to both the right and left hands), C41 Photo of [defendant's] mug shot (attention to his right hand), and C43 Photo of [defendant's] mug shot (attention to his left hand)." Supplemental Petition at ¶ 6. Defendant asserts that appellate counsel should have asserted that these exhibits, in conjunction with the trial testimony, prove that defendant was not the perpetrator, contradicting the other identification evidence presented at trial. Supplemental Petition at ¶¶ 6-11. Therefore, defendant appears to be claiming that the jury's conclusion that he was one of the robbers was against the weight of the identification evidence, and that appellate counsel should have raised this issue in defendant's direct appeal.

11

Initially, appellate counsel could not have been ineffective for failing to raise a weight of the evidence claim on direct appeal, as defendant did not file a post-sentence motion challenging the weight of the identification evidence and thus waived the issue. *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa. Super. 2012) (challenges to weight of the evidence must be presented at trial in an oral or written motion prior to sentencing, or in a post-sentence motion, or the claim will be waived); *Commonwealth v. Spotz*, 18 A.3d 244, 278 (Pa. 2011) (no merit to claim that appellate counsel was ineffective for failing to raise a waived claim).

In any event, defendant cannot demonstrate that he was prejudiced by appellate counsel's actions. It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "shock one's sense of justice." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *appeal denied*, 878 A.2d 864 (Pa. 2005) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555) (Pa. Super. 1989)). Moreover, credibility determinations are solely within the province of the fact-finder, and "an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact." *Commonwealth v. Taylor*, 63 A.3d 327 (Pa. Super. 2013) (quoting *Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. 2012)). In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Taylor*, 63 A.3d at 327 (quoting *Shaffer*, 40 A.3d at 1253).

Here, two victims identified defendant in a photo array. N.T. 3/8/11 at 85-86, 121-122; 3/9/11 at 110-114. Both victims identified defendant at trial as one of the two individuals who robbed them at gunpoint. N.T. 3/8/11 at 58-59, 117-118. Victim Lauro Paulino testified at trial that he did not mention defendant's tattoos at the preliminary hearing in this case as it "didn't

12

come to [his] mind at that time." N.T. 3/8/11 at 102-103. Paulino clarified that he had never been asked about defendant's tattoos prior to trial, either by police or at the preliminary hearing. N.T. 3/8/11 at 104. While defendant argued that the failure to mention defendant's tattoos, together with failure to identify defendant at a pretrial lineup, proved misidentification, the jury was free to accept Paulino's testimony and reject defendant's arguments. Moreover, that the video surveillance was unable to clearly delineate defendant's tattoos did not undermine the compelling identification testimony.

Therefore, there was compelling evidence to support the jury's conclusion that defendant committed the crimes of which he was convicted. As a result, the Court would have properly denied any post-sentence motion based on the weight of the evidence. Of course, appellate counsel could not have been ineffective for failing to raise a meritless weight claim, even if it had been preserved. *Miller*, 987 A.2d at 648.

### I. Illegal Sentence

Defendant next asserts that the Court erred in denying defendant's claim that "[defendant] is still serving an illegal sentence, since the Court has ruled, that a mandatory sentence is Unconstitutional...," and that defendant's "charges should have been merged." Statement of Errors at ¶ 9. This claim is without merit.

Defendant claimed that his sentence was unconstitutional because the statute under which he was sentenced has been ruled unconstitutional. Supplemental Petition at p. 6. Defendant was sentenced to a 5-year mandatory minimum sentence pursuant to 42 Pa.C.S. § 9712 (visibly possessing a firearm during a crime of violence), which was subsequently held unconstitutional by *Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. 2014), as the statute violated the United States Supreme Court holding in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

13

However, defendant's sentence became final thirty days after the Superior Court affirmed his sentence on August 3, 2012, prior to the holding in *Alleyne*, and the Pennsylvania Supreme Court has recently held that *Alleyne* does not apply retroactively to cases pending on collateral review. *Commonwealth v. Washington*, --- A.3d ---, *8 (Pa. 2016).

Defendant's companion claim, that his sentence is illegal because his sentences for robbery and conspiracy should have merged, is frivolous. Pennsylvania courts have long held that the crime of conspiracy does not merge with the completed underlying offense. *See Commonwealth v. Stocker*, 622 A.2d 333, 347 (Pa. Super. 1993).

### J. Failure to Challenge the Weight of the Evidence

Finally, defendant alleges that trial counsel "was ineffective for failing to challenge the weight of the evidence during trial." Statement of Errors at ¶ 10. While defendant implicitly raised a claim that appellate counsel was ineffective for failing to argue a weight of the evidence claim (*see* section III(H), above), defendant never argued that trial counsel was ineffective for failing to raise a weight claim at any time prior to this appeal. Because defendant's claim was never raised before the trial court, it has been waived for purposes of appeal. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084-85 (Pa. Super. 2014). Similarly, defendant's claim is waived for vagueness, as the Court is left without direction as to how the verdict was allegedly against the weight of the evidence, or how trial counsel was ineffective for failing to challenge it. *Commonwealth v. Freeman*, 128 A.3d 1231, 1248-49 (Pa. Super. 2015) (a claim challenging the weight of the evidence will be waived where defendant fails to specify in his 1925(b) statement which verdict or verdicts were contrary to the weight of the evidence, or to offer specific reasons as to why those verdicts were against the weight of the evidence). To the extent that defendant is

14

reasserting a weight claim based on the identification evidence, the claim fails on the merits for the reasons set forth in section III(H), above.

## IV. CONCLUSION

For the foregoing reasons, the Court's order dismissing defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

15

Commonwealth v. Tyreek Maxwell           CP-51-CR-0009181-2010
Type of Order: 1925(a) Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

         Tyreek Maxwell
         JK-7424
         SCI Mahanoy
         301 Morea Rd.
         Frackville, PA 17932

Type of Service:      ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney(s):**

         Hugh J. Burns, Jr., Esquire
         Chief, Appeals Unit
         Philadelphia District Attorney's Office
         Three South Penn Square
         Philadelphia, PA  19107

Type of Service       () Personal (**X**) First Class Mail ( ) Other, please specify:

**Additional Counsel/Party:**

         Joseph D. Seletyn, Esquire
         Prothonotary
         Office of the Prothonotary – Superior Court
         530 Walnut Street, Suite 315
         Philadelphia, PA 19106

Type of Service:      ( ) Personal  (**X**) First Class Mail ( ) Other, please specify:

**Dated: August 16, 2016**

Jonathon M. Frisby
Law Clerk to Hon. Glenn B. Bronson